Good morning, Counsel. Good morning, Your Honors. May it please the Court, I am Eric C. Jacobson, representing Plaintiff Appellant Cash Ferguson-Cassidy, an LAPD rifle shooting survivor who was with us in court this morning. All right, Counsel, I've received something pretty unusual in this case. I don't think any panel's really gotten it before, but we just prepared remarks with the intention, indicated intention to reserve 1.5 minutes for rebuttal. If you have given opposing counsel your prepared remarks and you're prepared to submit it, then we'll review this in lieu of your argument and give you the reserved time for rebuttal. Was that your intention to proceed in that fashion? I hadn't thought it through to that extent, Your Honor. I did put time into this statement. It does time in 13.5, but I know, as you said yesterday in one of the cases, it's a hot bench. So I would also be glad to engage with you. It's really your call. I can go in any direction. But I'm not trying – We've now gotten the benefit of this written statement, so let me see if this hot bench has any questions that they'd like you to answer. Judge Horwitz? Yeah, I have only one question. Is it your position that you should have gotten a directed verdict, a J-M-O-L, in your favor? Well, I wasn't the trial counsel. No, I mean your side, Mr. Ferguson Cassidy. Yes, in essence, yes. That there was no evidence from which a jury could conclude that Officer Maynard was in fear of his life? No, the – Is that your position? Because the case – Put aside the questions about whether the jury instructions were correct and other stuff. Assume that there's – Put that all aside for a second. You got the case to a jury. Both sides argued their positions, and the jury found in favor of the defendant. And so I understand your first argument to be they couldn't possibly have found in favor of the defendant. There was no evidence from which they could have reached that conclusion. That's correct, Your Honor, because they didn't have the applicable law in the instruction to – Well, no, I asked you to assume the instructions were okay for a moment. I'm saying, are you saying that even if the instructions were okay, there was simply no evidence from which the jury could have reached a defense verdict in this case? Yes, Your Honor, there was no evidence because the – But didn't Officer Maynard testify that he was in fear of his life? He may have been incredible. This is not a credibility. I've assumed for the sake of all my arguments that the jury believed that Officer Maynard was in fear of his life. If they did, doesn't that provide substantial evidence for their verdict? No, Your Honor, it does not. And that's because this was one continuous event. He, in the – No, I understand the facts, but I'm astounded by the answer. If the jury properly instructed, and I understand you have an objection now to an instruction you didn't object to below, but if the jury properly instructed, concludes that the officer was in fear of his life and that's why he made the shots, you're saying there's no evidence from which the jury could have concluded that? He failed to warn in advance of doing the shooting. This is a black-letter law requirement the jury was oblivious to. Okay, so tell me where in our – That's the jury instruction argument again. Assuming that the jury was properly instructed, then it becomes a credibility determination because you've got an officer telling the jury that he basically directed Mr. Ferguson Cassidy not to move and Mr. Ferguson Cassidy turned towards him, pointed a gun at him. Your Honor. That's a fact question. The facts are undisputed that there was no advance warning. There was – he did not direct him not to move. So you're saying as a matter of law – I can play you the audio. No, we have the audio. It's in the record. My question is this. You're saying that as a matter of law that what the officer here did when he shouted, don't something move, don't blanking move, was an insufficient warning and therefore no jury could possibly find that he was in fear of his life. Absolutely it was insufficient. Okay. So tell me what case says that. The black letter law cases say that. I know. Every case is black letter law. Tell me what case says it. I've never seen a case. Tennessee v. Garner in 1985, Your Honor, clearly established that deadly force is different. Deadly force you must warn. If you don't warn, it's civil liability. Tell me what case says that. Tennessee v. Garner said it, and then the Ninth Circuit affirmed it in the Ruby Ridge case. Harris v. Roderick said, quote, whenever practicable, a warning must be given before deadly force is employed. That's the key to the case. Okay, so no, no. They haven't even argued that it was impracticable. Stop for a second. The way this works is we get to ask questions. You're here to answer questions, so it's most helpful to hear the questions first before you answer it. Because we've got the benefit of the full briefing in this case. So the argument on the other side was he made a warning. He said don't move. Mr. Ferguson Cassidy turned around with a gun in his hand, and the officer then fell in reasonable fear of his life. This was simultaneous, Your Honor. I understand. No, I agree it was simultaneous. So why under that circumstance couldn't a jury conclude that it wasn't practicable for then him to give a new warning when Mr. Ferguson Cassidy turned around with a gun in his hand? The warning that was mandated had to have been done before he broke cover because he had already formulated a fear that Mr. Ferguson Cassidy was going to come around and shoot at them. This is what he said at page 12 of the answering brief, that he was worried about, you know, he had to break cover and do an ambush because Mr. Ferguson Cassidy, he feared, might come their way. So he has the fear. He decides to use deadly force. He breaks cover and commits an ambush and then throws in a literally less than a second, don't fucking move, bang, bang, bang. And if you listen to it. I was trying not to say that word, but you wanted to, so. I apologize, Your Honor. Did trial counsel have an opportunity to argue all this to the jury? I wasn't a witness to all the trial. Was there anything in the record, any ruling by the district court, that precluded trial counsel from making all of these arguments? Yes. I mean, there is proffered instruction that. Setting aside the jury instructions, as a factual matter, was there anything precluding trial counsel from making these arguments? Well, I don't know. I don't know, Your Honor. I know that the trial was marred by what looked to have been a determination on the judge's part to make it a very, very speedy trial, unduly speedy, and all kinds of sharp practice was employed by the city of Los Angeles deputy city attorney, Mr. Brett. I don't think that they had any type of real opportunity. If you just can imagine how that so-called negligence instruction, there was colloquy right up to the time of the closing argument, and they're scheming to do a very confusing negligence instruction that has absolutely no pertinence, and it was a very, very – the trial was basically a travesty. As I said in my prepared remarks, which it looks like I'm not going to get to. We have them, so you don't have to reread them. Thank you, Your Honor. The jury verdict is not worth the paper it was written on. Well, we've got the benefit of those remarks, so unless Judge Eaton has any questions, why don't you reserve the couple of minutes that you intended for rebuttal? Are there magic words of warning that have to be given, specific words? Yes, there is, Your Honor, most definitely, and this is part of why we have an epidemic of police homicides against African Americans in recent years. It has to be an explicit warning. I'll shoot you, stop or I'll shoot. I'll shoot you if necessary, none of which was given. This was an ambush. We don't do that in America. This is not Iraq, as I said in part of my prepared remarks. That's okay, you've answered my question. Officer Maynard is not a U.S. Army infantryman in Iraq. He's an American policeman in Los Angeles. He's sworn to protect and serve. This was an ambush that could have been done as if Mr. Ferguson Cassidy was an enemy combatant in a foreign battlefield. So your position is, as I asked you at the beginning, that the judge shouldn't have even let this case go to the jury. He should not have. The judge should have just awarded a judgment in your client's favor. He should have realized as he... No, no, answer the question I'm asking. Your position is that the judge should have directed a verdict in your client's favor. Either directed a verdict or allowed an accurate description of the law. The judge, there's nothing in this record, and I've read it, that suggests the judge restricted your client's lawyer from giving whatever description occurred, of whatever occurred. So there's no motions in limine that prevent evidence. As a matter of fact, if you look at the details of that negligence instruction. No, forget the instruction. He was handcuffed, Your Honor. Forget the instruction. He was told not to argue. Where? Breaking cover. Where? I'll give you the exact site. He was told explicitly by Judge Wilson and Mr. Brett, do not argue. And Mr. Brett said, I'll be looking closely if you ever open your mouth about him breaking cover. I'm going to consider that negligence. And they got all off on the tangent, completely inapposite. That if he had negligently broke cover, then you can't argue that that's objectively unreasonable. So the whole thing got derailed. It was a psychological warfare tactic, as a matter of fact, against the attorney. So let me ask you a question. I think you can answer. He was handcuffed. An answer without reference to your preparative works. What are you seeking from us? One of two things, Your Honor. You have the power under Scott v. Harris, footnote 8, to take into consideration. No, I'm just asking what you're seeking from us. Don't just you're either seeking a new trial or you're seeking a directed verdict in your favor. What are you seeking from us? Either we would be obviously prefer, because Justice DeLay has just denied that. I don't need a speech with each answer. Just tell me what you're seeking from us. Yes, Your Honor. I'd like you to enter liability ruling as a matter of law for Mr. Ferguson Cassie. Alternatively, at a minimum, remand the case to a new judge for a new trial. Okay. All right. Thank you. Thank you. Good morning, Your Honors. Steven Renick for the appellee, Officer Maynard. I have not seen the prepared remarks, so unfortunately I can't respond to anything in them. Based on the colloquy that just happened, the only comment that I would want to make is regarding the appellant's statement that the shooting and the statement don't move were simultaneous. And what the testimony literally said was that the movement by Mr. Ferguson Cassie was simultaneous with Officer Maynard saying don't move. And then he immediately shot because he was in fear of his life because the gun was there. I'm not sure I understand what's differing from what you're saying from what your opponent was saying. And perhaps I'm overreading what the appellant had said in the brief. The impression I got was that he was saying that the shots and the statement by Officer Maynard were simultaneous. And the testimony is that the statement came first and then the shot after the statement was made. Can you deal with what I think is the major argument your opponent's making, which is this. There was plenty of opportunity to warn Mr. Ferguson Cassie of the presence of police before this incident, before the shooting occurred. He walked along the house. The officer waited until some point in time, forget why he waited, and then shouted his warning. And Mr. Ferguson Cassie turned around, had a gun in his hand, and the shooting was almost, the don't move and the shooting were virtually simultaneous. I take it the argument the other side's making is that the violation of civil liberties here occurred by not giving the warning at an earlier point in time so as to avoid this incident. Can you respond to that? Yes, I do understand that to be their position. And our position is that that isn't a violation of any civil rights that the party had. The police are not required to warn of their presence. There is certainly case law that before an officer uses or even threatens to use deadly force, they should give a warning. Their theory of the case is that the officer, in effect, decided to wait until a point in time when he could conduct, as your opponent calls it, an ambush. Were they able to make that argument to the jury, or did the judge prevent them from making that argument? I don't believe there was anything that prevented them from making that argument. And I would say that there is nothing in the record to even hint that Officer Maynard had already made a decision to use deadly force. To the contrary, the evidence was that when he saw Mr. Ferguson Cassie exit the house, he took that as an opportunity to begin interacting with him to determine what the issue was regarding the observations of the gun, the gunshot or firecracker issue. He had no preconceived intention of using deadly force. It was his observation of the gun in the hand of Mr. Ferguson Cassie after he exited that caused him to say, don't move. Let me ask you about the jury instruction. And I understand we review for plain error. Yeah. But let's assume just for purposes of discussion that the officer was negligent in not making his presence known. Is that a fact the jury could take into account on the adequacy of the warning? In other words, the jury was instructed his negligence is irrelevant, essentially. And so my question is, assuming we had a proper objection, we're not reviewing for plain error. Why couldn't a jury take into account in determining whether or not the warning was inadequate, whether the officer was negligent in not making his presence known earlier? Well, negligence isn't an issue in terms of a 1983 claim. It was their violation of his civil rights. And in particular here, it's the excessive force. So your position is if a reasonable officer would have made his presence known earlier and that's what gave rise to the whole set of incidents, it doesn't matter. Correct. I'm not conceding that their presence should have been made known earlier. No, I understand. But it's in your legal position. Right. No, while that might be relevant to a state law negligence claim, it has no relevance whatsoever with the claim that was actually before the jury. So you can, in effect, I'm not saying those are the facts in this case. You can, in effect, negligently put yourself in a position where you have to use deadly force. Yeah. But the jury shouldn't consider that in its delivery. Yes, and I think that's a necessary extension of the Supreme Court's recent Mendez case. In Mendez, the Supreme Court said even if there's a Fourth Amendment violation, that isn't something that a jury could take into consideration in determining whether the use of excessive force should be deemed a violation of constitutional rights. But the jury in this case was told to consider alternative methods, and I suppose one of those could be the failure to adequately warn before the use of excessive force, right? Exactly. Now, were there arguments? Were you at the trial counsel, by the way? No, I wasn't, Your Honor. Okay. Were there arguments made that there should have been a warning, that before he broke cover he should have taken other measures so the jury got the opportunity to consider all of those arguments in light of the facts? I apologize. I don't particularly recall the closing arguments. I believe there was. I would defer to counsel, who probably has a much better knowledge of that. I can't tell, Your Honor, definitively one way or another. There certainly was nothing preventing trial counsel from making those arguments. There were no instructions by the court preventing them, and the jury was literally given an instruction that would have encouraged such argument. So if it wasn't done, I would suggest that it was by choice, not by a feeling of constraint. No specific ruling that would have limited the plaintiff's ability to present the facts in the case? Correct. Can you address what your colleague talked about, the judge telling counsel not in final argument to go certain places? Is that – I'm having trouble finding that in the record in front of us. Would you tell it? I don't recall that specific colloquy, so I'm afraid I apologize. I can't respond to that. All right. I don't have any further questions. Thank you very much, counsel. Your Honor, just that last point first. The colloquy was in regard to this, what I call the unintelligible instruction. Well, can you give me a record site, the record site that supports your argument that the district court somehow prevented or limited the plaintiff's ability to present evidence? I have in my computer the excerpt of record. You'll have to do it by a 28-J or informally as you wish, perhaps while your last case is being argued. Do you have a record site? Yes, I'll get it for you, Your Honor. I don't have it in front of me or memorized. Your Honors, this was one continuous use of excessive force. Officer Maynard was poised and tacked up and armed with an M16 assault rifle, and he saw my client walking out the back door from a window, and instead of exclaiming, and this is at 254 at night when his voice would have rung out very, very sharply, LAPD, come out with your hands up or I'll shoot you. It was very easy. He didn't have to break cover and come into personal confrontation. He chose to do it. Were those arguments made? Your Honor, I wasn't a witness to the closing arguments, but it's clear that the jury was oblivious to the mandate of the Supreme Court and the Ninth Circuit that warnings must precede the use of deadly force. So was there an instruction requested on that topic? Yes, there was, Your Honor, most definitely. And was it denied? It was denied. It's not cited in your brief. It is, Your Honor. The instruction that was denied was that the jury was to be told that the absence of an advance warning, the absence of an announcement of their presence prior to the shooting was to be taken into consideration by the jury. That's a little different than the warning, isn't it? To me, they're synonymous because actually there is a difference because what he said was, you know, don't effing, I'll use that word, shoot. That's not a warning that if you move, I'm going to kill you. That's not an adequate warning. I understand that you proposed an instruction, but I'm having difficulty in looking at your brief. The instruction. It's a finding that you're arguing on appeal that the judge erred in not giving that instruction. You're arguing that the judge committed plain error in the instructions that he gave, but is there an argument in your brief that the judge erred by not giving a specific instruction that you requested? Yes. Where in your brief? I'm looking at the arguments that you list on the headings and I'm looking at the brief. I don't see an argument raised that the district court erred by not giving a specific requested instruction. You do argue he made plain error, committed plain error in its instructions by giving modified circuit instruction 9.25, and we can take that issue into account. Page 31, Your Honor, of the opening brief? Yes. And that's discussed there? Tell me. I want to take a look at it. Where else besides page 31 of your opening brief? You want me to? Well, I just don't see it. It's not one of the listed arguments in your headings, and so I'm having trouble. Your Honor, I'll just. It's news to me. That's what I'm asking. On page 31, number two, Judge Wilson abused his discretion when he refused plaintiff's request that the criteria listed in Ninth Circuit standard jury instruction for excessive force be supplemented to include. No, that's the argument. I understand that argument. That argument is the judge erred in giving the instruction that he did. You make that argument quite clearly. He didn't give that instruction. My question is do you make an argument. No, he didn't give that instruction. That's the point. No. He gave a modified version of 9.25. That's the argument in your brief in that you argue that was error, even though that objection wasn't made below. I'm asking a very different question. Your Honor, I believe there's a misunderstanding. He did not give any instruction whatsoever of any way, shape, or form about the fact that they didn't previously announce her presence. No, we have no misunderstanding at all. Okay, good. I'm asking you a very specific question. Yes, Your Honor. Tell me where in your brief you say we submitted a proposed instruction that he should do this. He didn't give it, and that was error. I don't, and I'll look at your brief again when we're done. So you don't have, it's not a, it's not a snap quiz. I just don't see it. Page 32. Okay, that's the place. Number 7, it recites the proposed instruction, the fact that police officers did not verbally announce their presence before Defendant Maynard fired his rifle. Next sentence, underscored, Judge Wilson refused this request. That factor is not found in the district court's final written jury instruction as they appear, nor did Judge Wilson include this additional criteria in the instructions he read to the jury. Okay, so just so I'm clear, your argument is that the instruction he gave was error because it didn't include what you requested. Exactly. Okay, and that argument wasn't made below. That argument. There's no, what I was asking, and maybe you confused it, was there any objection below to the failure to give your requested instruction? Yes, that's an interesting question, Your Honor. And I, the answer is it appears, and I conceded this in the reply brief, and it's why I'm afraid for my client's sake that the plain error standard may apply. I don't want to totally capitulate. Right, there was no objection that I could find in the record. Correct, Your Honor. To the district court's formulation of the jury instruction. You've answered my question, and I'm sorry that we were missing each other. It's plain error. I think we've now taken you well over your time. Unless the panel has any questions, I'm prepared to submit the case for decision, Judge Eaton. Any questions? Thank you, Your Honor. Thank you very much. Both sides of the matter submitted. As I said at the end, please do the right thing.
judges: Nguyen, Hurwitz, Eaton